IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIE DAVIS, | : | CIVIL NO. 3:13-CV-1107 |
| | : | |
| Plaintiff, | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| ANGELO JORDAN, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

I. **Statement of Facts and of the Case**

In this case, the plaintiff, Willie Davis, a federal prisoner, sought to sue a prison disciplinary officer for ruling against him in a disciplinary hearing. Davis attempted to pursue this action, even though he had been found guilty of violating prison rules by exposing himself to prison staff. Specifically, on February 26, 2012, an Incident Report was written against Davis charging him with Engaging in Sexual Acts, Indecent Exposure, and Refusing an Order. The incident report provided the following straightforward narrative of these prison infractions:

> At approx. 6:19 AM, 2/26/12, while I was feeding the G-block Housing Unit, I looked across the range and inmate Davis 21433-016 was standing on his bunk with his erect penis exposed and he was fondling his genitalia. Inmate Davis was ordered to cover himself and refused. He continued to fondle his exposed and erect penis.

Davis received advanced written notice of the charges against him and was advised of his administrative rights in connection with these disciplinary matters rights by the Investigating Officer, Lieutenant D. Knapp, on February 26, 2012. At this time Davis stated he understood his rights and did not provide a comment. Davis did not request any witnesses.

Based on the information provided by the Reporting Officer, and Davis' refusal to provide any mitigating evidence or extenuating circumstances, the Investigating Officer believed the Incident Report was warranted and referred the Incident Report to the appropriate Unit Discipline Committee ("UDC") for further review and disposition. Davis appeared at a disciplinary hearing before the UDC on March 1, 2012, and chose to make a statement, stating, "[t]hat wasn't me." However, based on the Reporting Officer's statement, the reporting requirements, and Davis' statement, the UDC referred the charges to the Disciplinary Hearing Officer (DHO) for further disposition. At this initial hearing Davis was provided with a copy of the "Inmate Rights at Discipline Hearing" form and was specifically informed of his rights with regard to the DHO hearing. Davis refused to sign his copy of the form; therefore, the form was signed by G. Shuck as a witness.

At this March 1, 2012 UDC proceeding, Davis was also provided with written notice of the disciplinary hearing before the DHO. Advised of his rights, Davis

declined the services of a staff representative, declined to call any witnesses, and refused to sign the form; therefore, G. Shuck signed the form as a witness.

On April 6, 2012, Davis appeared before DHO Jordan for his final disciplinary hearing in this matter. At the time of this DHO hearing, Jordan was a certified disciplinary hearing officer. In fact some ten months earlier, on July 14, 2011, Jordan completed the Discipline Hearing Officer certification at the United States Department of Justice, Federal Bureau of Prisons National Corrections Academy in Aurora, Colorado.

At the outset of this disciplinary hearing, DHO Jordan noted that Davis had received advance written notice of the charges; that he had been advised of his rights before the DHO; and that he waived his right to a staff representative. DHO Jordan also observed that Davis denied the charges. DHO Jordan advised Davis of his due process rights and noted that Davis indicated he understood his rights. (Id.) Jordan further confirmed that Davis had waived his right to a staff representative, witness testimony, and his right to provide documentary evidence. Davis was then provided an opportunity to make a statement by DHO Jordan and stated "The register number is wrong on the incident report, therefore, I don't know what Davis did this. I've been trying to be good since I've been here."

Alerted by Davis to this procedural issue concerning errors within the original issued incident report – that the inmate number listed on the original report was not his inmate number– DHO Jordan inquired into this issue. Upon inquiry, the DHO determined that this was a typographical error, and that Davis was issued a corrected incident report on two occasions, once again by the investigating lieutenant and during his UDC Hearing. Further following up on Davis' allegations–the only defense mounted by Davis to these disciplinary infractions–the DHO learned that there was no other inmate named Davis with the listed inmate number, a fact which undermined Davis' claim that there had been some form of mistaken identity in this case.

After considering the conflicting and contradictory statements of Davis, and viewing those statements against the written report of the Reporting Officer, DHO Jordan reached a decision in this matter, stating that:

> The DHO gave greater weight to the reporting officer's written statement that she observed you with your penis exposed and fondling your genitalia than to your claim you did not commit the prohibited act and it was an unknown inmate named Davis who did commit the prohibited act. This is based on the fact: The reporting officer recognized you in cell #106 in G block; the aforementioned administrative error concerning your register number is not a valid defense concerning your commission of the prohibited act. The greater weight of the evidence supports you are the correct inmate Davis in this incident. You have provided no testimony which would convince the DHO it was not you who engaged in this sexual act, as based on an error

of one numeral in your register number in section 3 of the incident report; the act in which you committed pales in comparison to the administrative error which you claim substantiates another inmate committed the prohibited act charged.

DHO Jordan stated that he also considered Davis' denial of the charge and Davis' statements, but further informed Davis that "You have an extensive history of this sort of deviant conduct which only bolsters the DHO's finding you committed the prohibited act in this case. Accordingly, based on the eyewitness account of the reporting officer, the DHO has concluded that the greater weight of the evidence supports you committed the prohibited act charged."

At the conclusion of the hearing, DHO Jordan found, after considering the evidence, that Davis had committed the prohibited act of Engaging in a Sexual Act, and imposed the following sanctions: 27 days disallowance of good conduct time, 30 days disciplinary segregation, six months loss of commissary privileges, and six months loss of visiting privileges. DHO Jordan also thoroughly documented the reasons for the sanctions he imposed, stating,

> Engaging in sexual acts in a correctional institution, particularly inmates manually stimulating their genitals in view of female staff, is demeaning to staff and undermines their authority. Undermining staff authority ultimately jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed

> as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Johnson's (sic) period of incarceration. Loss of telephone, commissary and visiting privileges is imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Stringent sanctions are warranted based on the inmate's repeated commission of this type of prohibited act.

Davis was provided with a copy of the DHO's report on May 2, 2012, which advised him of the DHO's findings, the specific evidence relied upon, the actions taken, and the reasons for the actions, as well as his right to appeal the action within 20 calendar days.

Dissatisfied with the outcome of these disciplinary proceedings, Davis filed a federal habeas corpus petition challenging this prison incident report issued to him and sanctions subsequently imposed upon him by the Discipline Hearing Officer (DHO). <u>Davis v. Warden Thomas</u>, No. 3:12-CV-1997. In this petition, Davis asserted that this hearing process was constitutionally infirm because he believed that DHO Jordan had not completed his training prior to the April 2012 hearing, a claim that was rebutted by documentary evidence submitted by respondents. On the basis of this thin reed, Davis sought to set aside this disciplinary citation. Davis' federal habeas corpus petition was denied by this court on June 20, 2013. <u>Davis v. Warden Thomas</u>, No. 3:12-CV-1997 (Doc. 14.)

It was against this factual backdrop that Davis also filed a *pro se* lawsuit against the DHO, Angelo Jordan, seeking damages from this correctional official. Davis' civil lawsuit repeated the claims which we previously found unpersuasive when advanced in the context of his habeas corpus petition, an assertion that Jordan's alleged lack of training undermined the entire disciplinary process. (Doc. 1.) While we granted Davis leave to proceed *in forma pauperis*, (Doc. 2.), as part of our legally-mandated screening of *pro se*, *in forma pauperis* cases, we carefully reviewed this complaint, and concluded that it failed to state a claim upon which relief may be granted. Accordingly, we recommended that this complaint be dismissed. (Doc. 6.) On June 28, 2013, the district court adopted this recommendation, and dismissed Davis' complaint with instructions that Davis should file an amended complaint on or before July 12, 2013 correcting the flaws in his original complaint. (Doc. 8.)

Davis ignored this deadline. Instead, on July 25, 2013, Davis filed a notice of appeal, appealing this decision to the United States Court of Appeals for the Third Circuit. (Doc. 9.) <u>Davis v. Angelo</u>, No. 13-3340 (3d Cir.) While the court of appeals never notified us of the outcome of this appeal, we have now reviewed the docket of this appeal, and determined that the appellate court affirmed the order dismissing this case on July 14, 2014. Thus, years have now elapsed without any action by Davis to

prosecute this case, or comply with the order directing him to file an amended complaint by July 12, 2013.

On these facts, Davis' complaint should now be dismissed with prejudice.

## II. Discussion

### A. This Case Should Be Dismissed With Prejudice

While our initial screening analysis called for dismissal of this action, the Court provided Davis a final opportunity to further litigate this matter by endeavoring to promptly file a proper amended complaint. Having concluded that this *pro se* complaint was flawed in multiple and profound ways, we followed this course recognizing that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Thus, in this case, Davis was given this opportunity to further amend his complaint, but has now forfeited this opportunity through his continuing inaction,

inaction which now spans several years. In this situation, where a wholly deficient complaint is dismissed without prejudice but the *pro se* plaintiff refuses to timely amend the complaint, it is well within the court's discretion to dismiss the complaint with prejudice given the plaintiff's refusal to comply with court directives. Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007). In Pruden, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint. In terms that are equally applicable here the Court observed that:

> The district court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the district court did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. See In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3d Cir.1996). The district court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." Id. (quoting Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994)).

Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).

Therefore, consistent with the prior practice of this Court, it is recommended that the complaint now be dismissed with prejudice as frivolous without further leave to

9

amend. See, e.g., Wicks v. Barkley, 3:12-CV-02203, 2013 WL 5937066 (M.D. Pa. Nov. 4, 2013)(Mariani, J.); Davis v. Superintendent, SCI Huntingdon, 3:12-CV-01935, 2013 WL 6837796 (M.D. Pa. Dec. 23, 2013)(Mariani, J.).

### III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed with prejudice as frivolous for failure to state a claim and this case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of November 2016.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
